IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MIKEL KINDER, Jr.,

    Petitioner,

v.

MICHAEL MILLER, Warden,

    Respondent.

Case No. 24-CV-0448-SEH-JFJ

## OPINION AND ORDER

Petitioner Mikel Kinder, Jr. ("Kinder"), an Oklahoma prisoner appearing pro se, seeks federal habeas relief under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2005-190.  Specifically, Kinder alleges "newly discovered evidence in the form of recanted testimony from a key state's witness warrants relief." ECF No. 1 at 5.  Having considered Kinder's Petition for Writ of Habeas Corpus ("Petition") [ECF No. 1], Respondent Michael Miller's Pre-Answer Motion to Dismiss Petition for Habeas Corpus as Time Barred ("Motion") [ECF No. 6], Respondent's Brief in Support of Pre-Answer Motion to Dismiss Petition for Habeas Corpus as Time-Barred [ECF No. 7], the record of state-court proceedings provided by Respondent [ECF No. 8], Kinder's Objection to Respondent's Pre-Answer Motion to Dismiss [ECF No. 9], Kinder's

Supplemented Objection to Respondent's Pre-Answer Motion to Dismiss [ECF No. 13] and applicable law, the Court finds and concludes that Respondent Michael Miller's Motion shall be granted.

## *BACKGROUND*

On April 18, 2006, a Tulsa County jury found Kinder guilty of murder in the first degree.  Court Minute, *Oklahoma v. Kinder*, CF-2005-190 (Tulsa Cnty. Dist. Ct. April 10, 2006); *see also* ECF No. 7-1 at 9.[1]  The Judgment and Sentence was entered May 25, 2006.  ECF No. 7-1 at 11.  Kinder was sentenced to life without the possibility of parole.  ECF No. 1 at 1.  Following the entry of the Judgment and Sentence, lengthy post-conviction proceedings ensued:

| Date | Event | Citation |
|---|---|---|
| June 19, 2006 | Petition in Error | Petition in Error, *Kinder v. Oklahoma,* F-2006-601 (Oklahoma Ct. of Crim. App. June 19, 2006). |
| August 22, 2007 | The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Kinder's Judgment and Sentence. | ECF No. 7-2. |
| September 3, 2008 | Kinder filed his First Application for Post-Conviction Relief ("PCR"). | ECF No. 7-1 at 15. |

---

[1] The Court's citations refer to CM/ECF header pagination.

| | | |
|---|---|---|
| September 29, 2008 | State district court denied the First Application for PCR. | ECF No. 7-1 at 15. |
| December 2, 2008 | OCCA declined jurisdiction over appeal from denial of First Application for PCR. | ECF No. 7-3. |
| July 21, 2009 | Kinder filed his Second Application for PCR. | ECF No. 7-1 at 16. |
| August 26, 2009 | The state district court denied the Second Application for PCR. | ECF No. 7-1 at 16. |
| October 9, 2009 | OCCA dismissed Kinder's appeal of the denial of his Second Application for PCR. | ECF No. 7-4. |
| November 6, 2009 | Kinder filed a Third Application for PCR. | ECF No. 7-1 at 17 |
| November 24, 2009 | The state district court denied the Third Application for PCR. | ECF No. 7-1 at 17. |
| March 15, 2010 | OCCA affirmed the state district court's denial of the Third Application for PCR. | ECF No. 7-5. |
| July 22, 2010 | Kinder filed a Fourth Application for PCR. | ECF No. 7-1 at 18. |
| August 27, 2010 | The state district court denied Kinder's Fourth Application for PCR. | ECF No. 7-1 at 19. |
| December 3, 2010 | OCCA affirmed the state district court's denial of the Fourth Application for PCR. | ECF No. 7-6. |

| | | |
|---|---|---|
| September 11, 2020 | Kinder filed his Fifth Application for PCR. | ECF No. 7-7. |
| October 2, 2020 | Kinder filed an Amended Application for PCR, or in the Alternative, Application for an Appeal Out of Time. | ECF No. 7-8. |
| October 22, 2021 | The state district court denied Kinder's Amended Application for PCR. | ECF No. 7-9. |
| September 8, 2022 | OCCA affirmed the state district court's denial of the Amended Application for PCR. | ECF No. 7-10. |
| January 24, 2023 | Kinder filed a Sixth Application for PCR. | ECF No. 7-11. |
| May 19, 2023 | The state district court denied Kinder's Sixth Application for PCR. | ECF No. 7-12. |
| March 27, 2024 | OCCA affirmed the state district court's denial of the Sixth Application for PCR. | ECF No. 7-13. |
| September 23, 2024 | Kinder filed his instant habeas corpus petition. | ECF No. 1. |

Critical to the instant Petition is the affidavit executed by Christina Melendez ("Melendez") on May 7, 2020. ECF No. 1-2 at 10-11. Melendez testified at trial that she knew Kinder through her boyfriend. Prior to the night Harold Islande was killed, she had seen Kinder about fifty times. ECF No. 8-5 at 25. On the date of the incident, Melendez was in her apartment

4

with her two nephews, aged three years old and twenty-one months old. *Id.* at 27. Around 7:30 p.m., while walking with her nephews to the trash dumpster, she saw four black men and three Mexican men standing in the middle of the sidewalk arguing. *Id.* at 29-30, 39. Melendez testified Kinder was part of the group in the argument. *Id.* She testified Kinder had cornrow braids that came to his mid-neck. *Id.* at 31-32. One of the other black men had braids close to his head along the hairline, another was bald, and another had a do-rag on. *Id.* at 32.

Melendez testified as she walked back by the men on the sidewalk after discarding her trash, Kinder approached her and asked if she spoke Spanish and if she could tell the Mexican man something. *Id.* at 33. She testified, "[h]e asked me if I could tell the gentleman that he was going to go get his heat and he was going to blow his brains out." *Id.* Melendez stated that while he said this, Kinder was patting his waistline. *Id.* at 33-34. Melendez told Kinder she does not speak Spanish. *Id.* at 33.

Sometime after she took out the trash and returned to her apartment, Melendez testified she saw three of the black gentlemen go upstairs. *Id.* at 40-41. She testified,

> I had my front door open and I had the baby gate up so my nephews couldn't get outside so the wind would still come through. And my nephew, the three year old, he wanted to go outside and play with his trucks and stuff and we have carpet in the front room, so he couldn't really play with his Tonka Trucks. And I told him, no, you

5

>can't go outside because, you know, there was an argument going on and I did not want him to be unsafe. So when I seen the gentlemen upstairs, I realized, well, it's over, they're done, so he's okay to go outside and play right here in the front area. And I was sitting on the couch holding my other nephew watching Winnie the Pooh, and so when I see him go upstairs, I just figured that my nephew was safe.

*Id.* at 41. After letting her nephew play outside, she brought him inside to take a bath and get ready for bed. *Id.* at 42. Around 9:30 p.m., as she was getting her nephews in the bathtub, she heard a "bang." *Id.* at 28, 42. She went back to her front door to look out and saw Kinder run towards the swimming pool. *Id.* She described Kinder as wearing gray shorts that sagged and fell to his calf and a gray shirt. *Id.* at 53-54. Kinder was the only one out of the four wearing shorts. *Id.* at 54. Melendez also observed a body. *Id.* at 44.

Melendez further testified she left "detailed descriptions of the gentlemen" out of her initial interview with police because she was scared. *Id.* at 46-47. During a bench conference, the state prosecutor referenced Melendez's preliminary hearing testimony where she explained Kinder's girlfriend, Demetric White, threatened to "get" Melendez if she "told." *Id.* at 47-50.

Even after vigorous cross-examination, Melendez remained firm in her testimony regarding Kinder. *Id.* at 87. During redirect, Melendez testified:

6

> Q: Is there any doubt in your mind that the person who said, "I'm going to go get my heat and blow his brains out," is Mikel Kinder?
> A: No, sir.
> Q: And how is it that you are so certain of that?
> A: Because of all those men, he was the only one that I really had seen before, over and over.

*Id.* at 88-89.

Now, Kinder presents Melendez's May 7, 2020, Affidavit (the "Affidavit") wherein Melendez states:

1. She did not know Kinder by name in June of 2003 when asked by police.
2. She did not know Kinder by sight as being in the complex, as a neighbor.
3. She did not see Kinder in an argument with other black men versus two Hispanic males.
4. Kinder was not the black man that approached her and asked her if she spoke Spanish and to relay a message.

ECF No. 1-2 at 10. Kinder contends the Affidavit is "newly discovered evidence" which "warrants relief." ECF No. 1 at 5.

Based upon the above-described procedural history, Respondent Michael Miller ("Respondent"), by and through the Attorney General of the State of Oklahoma, Gentner F. Drummond, contends Kinder's Petition is time-barred. ECF Nos. 6 and 7. Specifically, Respondent argues: i) Kinder's Petition is untimely pursuant to 28 U.S.C. § 2244(d)(1)(A); ii) to the extent Kinder is availing himself to 28 U.S.C. § 2244(d)(1)(D) based upon the Affidavit, the Petition is still untimely; iii) Kinder is not entitled to equitable

7

tolling; and iv) Kinder does not satisfy the actual innocence gateway. *See* ECF No. 7. The Court agrees.

### *DISCUSSION*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state prisoners have one year from the latest of four triggering events in which to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). These events include:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; [and]
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The one-year limitations period generally runs from the date the judgment became "final" under § 2244(d)(1)(A), unless a petitioner alleges facts that implicate § 2244(d)(1)(B), (C), or (D). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).

## I. 28 U.S.C. § 2244(d)(1)(A)

Kinder failed to initiate the instant Petition within the time mandated by 28 U.S.C. § 2244(d)(1)(A). Under 28 U.S.C. § 2244(d)(2), the limitations period is statutorily tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). This statutory tolling provision, however, does not apply to applications for state postconviction or other collateral review filed beyond the one-year limitations period prescribed by the AEDPA. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."); *Anderson v. Cline*, 397 F. App'x 463, 464 (10th Cir. 2010) [2] ("[I]t is long settled that a state court motion for collateral relief cannot restart the clock on a limitations period that has already expired.").

As outlined above, Kinder was sentenced on May 25, 2006, and the OCCA affirmed his Judgment and Sentence on August 22, 2007. ECF Nos. 7-1 at 11 and 7-2. Kinder did not seek a writ of certiorari from the United States Supreme Court within ninety days after the OCCA affirmed the Judgment and Sentence. Sup. Ct. R. 13. Therefore, Kinder's Judgment and

---

[2] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Sentence became final on November 20, 2007, ninety days after August 22, 2007. *Locke v. Saffle,* 237 F.3d 1269, 1273 (10th Cir. 2001) ("petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until—following a decision by the state court of last resort—after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." (internal citations and quotations omitted)). Kinder's one-year period to file a petition for writ of habeas corpus began November 21, 2007.

Kinder filed his First Application for PCR on September 3, 2008. ECF No. 7-1 at 15. The First Application was denied. ECF No. 7-1 at 15. Kinder attempted to appeal this ruling. ECF No. 7-3. However, the OCCA declined to exercise jurisdiction over the appeal because Kinder failed to provide the OCCA with a certified copy of the state district court order denying relief. ECF No. 7-3 at 1. Accordingly, the appeal of the denial of the First Application for PCR was not "properly filed" and Kinder is not entitled to any statutory tolling related to the attempted appeal. 28 U.S.C. § 2244(d)(2). Kinder is entitled to twenty-six days of statutory tolling while his First Application for PCR was pending before the state district court, from September 3, 2008, until September 29, 2008. Kinder is also entitled to thirty days of statutory tolling in which he could have properly sought a post-

conviction appeal with OCCA.  Okla. Stat. tit. 22, § 1087.  Therefore, Kinder had until January 15, 2009 421 days after November 21, 2007), to file a timely petition for writ of habeas corpus.

Kinder did not file his instant Petition until September 23, 2024, well beyond January 15, 2009.  ECF No. 1.  Furthermore, Kinder's subsequent state applications for PCR were also filed after January 15, 2009.  The subsequent applications for PCR did not provide Kinder with any statutory tolling.  *Clark*, 468 F.3d at 714.  Accordingly, Kinder's Petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

**II. 28 U.S.C. § 2244(d)(1)(D)**

To the extent Kinder may be arguing, for purposes of 28 U.S.C. § 2244(d)(1)(D), the Affidavit provides a different trigger date, this position likewise fails.  The Affidavit was executed May 7, 2020.  ECF No. 1-2 at 10-11.  Kinder's Fifth Application for PCR was not filed until September 11, 2020, 127 days later.  ECF No. 7-7.  The denial of the Fifth Application was affirmed on September 8, 2022.  ECF No. 7-10.  Kinder filed his Sixth Application for PCR on January 24, 2023, 138 days later, and the district court's denial was affirmed March 27, 2024.  ECF Nos. 7-11 and 7-13. Pursuant to 28 U.S.C. § 2244(d)(1)(D), as of March 27, 2024, Kinder had 100

11

days,[3] or until July 5, 2024, to file a petition for writ of habeas corpus. The instant Petition was not filed until September 23, 2024. ECF No. 1. Therefore, even if the Melendez Affidavit and 28 U.S.C. § 2244(d)(1)(D) are used to determine the applicable limitations period, Kinder's Petition is still untimely.

### III.    Equitable Tolling

While the one-year statute of limitations may be subject to equitable tolling, equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Moreover, Kinder's "burden in making this demonstration is a heavy one: [federal courts] will apply equitable tolling only if he is able to show specific facts to support his claim of extraordinary circumstances and due diligence." *Vigil v. Jones*, 302 F. App'x 801, 804 (10th Cir. 2008) (internal quotation marks omitted) (quoting *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008)). Nothing in Kinder's Petition indicates extraordinary circumstances precluded the timely submission of his action.

In his Response, Kinder appears to request equitable tolling based upon his appointed counsel's alleged unauthorized removal of his actual

---

[3] 365 − 127 − 138 = 100.

innocence claim from his Fifth Application for PCR. *See* ECF No. 9 at 6-15. First, Kinder may not amend his Petition by including additional allegations in his Response. *Cf. Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established, however, that in determining whether to grant a motion to dismiss, the district court … [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."); *see also Alberty v. Rankins,* No. 23-CV-312-GKF, 2024 WL 3433656, at *2 (N.D. Okla. July 15, 2024) (unpublished) (declining to address additional habeas claims first raised in response to motion to dismiss); *Jones v. Ciolli,* No. 22-CV-3262, 2023 WL 11888941 at *1 (D. Colo. May 3, 2023) (unpublished) (applying *Jojola's* principle to writ of habeas corpus)

     Second, even if the Court were to consider Kinder's Response, Kinder failed to provide specific facts establishing extraordinary circumstances and his due diligence. He ultimately was able to present the actual innocence claim to the state court through his Sixth Application for PCR. ECF No. 7-11. The state courts considered the claim on the merits. *See* ECF Nos. 7-12 and 7-13. Kinder does not articulate any extraordinary circumstance which prevented him from timely filing the instant Petition within the 100 days remaining to do so after the OCCA affirmed the denial of his Sixth Application for PCR. Thus, equitable tolling is unavailable to salvage the Petition.

13

## IV. Actual Innocence

Kinder's Petition alleges, "Petitioner's proffered newly discovered evidence in form [sic.] of recanted testimony from a key state's witness warrants relief." ECF No. 1 at 5. Kinder explains, "[o]n 5-7-20 the State's key witness, Christina Melendez recanted her preliminary hearing and trial testimony against the Petitioner, stating that Tulsa County Homicide Detectives coerced her to make false testimony against the Petitioner while state prosecutors who questioned her at trial were present." *Id.* In response to the prompt regarding timeliness, Kinder states, "newly discovered evidence was not discovered until 5-7-20 and have been active in courts." *Id.* at 13. Nowhere in the Petition does Kinder explicitly invoke the actual innocence gateway. *See* ECF No. 1. However, in his Response and "Supplemented Objection to Respondent's Pre-Answer Motion to Dismiss," Kinder raises the actual innocence gateway. *See* ECF Nos. 9 at 2 and 13 at 2. He also asserts a due process violation alleging he did not receive a fair trial. ECF Nos. 9 at 2, 18-19 and 13 at 5. Given Kinder's pro se status and the liberal construction afforded to him, the Court will construe Kinder's Petition and other papers with leniency. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Respondent contends Kinder failed to allege actual innocence to trigger the gateway analysis, failed to present reliable evidence and failed to

14

overcome by clear and convincing evidence the presumption of correctness afforded to the state court's factual findings. *See* ECF No. 7 at 13-22. Furthermore, Respondent argues Kinder failed to allege a separate constitutional violation, and a freestanding claim of actual innocence is not a basis for federal habeas relief. *Id.* at n.5. For the reasons outlined below, the Court agrees with Respondent; Kinder cannot pass through the actual innocence gateway.

### A. Freestanding Actual Innocence Claim

First and foremost, a freestanding claim of actual innocence based on newly discovered evidence is not a cognizable basis for federal habeas relief. *See Boyd v. Martin,* 747 F. App'x 712, 715 (10th Cir. 2018). And, apart from his claim of newly discovered evidence, Kinder fails to plead a constitutional violation for this Court to consider even if Kinder could satisfy the actual innocence gateway requirements. *See* ECF No. 1.[4] For this reason alone, the Court finds Kinder failed to allege a legally cognizable claim and dismissal of Kinder's Petition, on this ground alone, is appropriate. *Boyd,* 747 F. App'x at 715.

---

[4] The Court acknowledges Kinder alleges a due process violation in his Responses. *See* ECF Nos. 9 at 18-19 and 13 at 5. Kinder may not amend his Petition by adding factual allegations or legal theories in response to a motion to dismiss. *Cf. Jojola,* 55 F.3d at 494; *see also Alberty*, 2024 WL 3433656, at *2.

### B. Presumption of Correctness

Kinder's actual innocence gateway claim also fails because he has not rebutted the presumption of correctness of the state courts' factual findings. 28 U.S.C. § 2254(e)(1). Kinder presented the Affidavit to the state district court in his Sixth Application for PCR. ECF No. 7-11. In its May 19, 2023, Order denying relief, the state district court concluded the Melendez Affidavit was "dubious" and could not be taken "as true because it flies in the face of other evidence presented at the trial[.]" ECF No. 7-12 at 9. The OCCA agreed with the state district court's finding that the Affidavit "was not probably true[.]" ECF No. 7-13 at 2-3. Kinder has failed to carry his burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### C. Reliability

Even if the Court grants Kinder leeway and accepts the due process violation raised in his Response as the underlying constitutional violation, Kinder has not satisfied the requirements of the actual innocence gateway. Successful actual-innocence claims are rare due to the demanding evidentiary requirements for such claims. *McQuiggin v. Perkins*, 569 U.S. 383, 386 and 401 (2013); *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); accord *McQuiggin*, 569 U.S. at 399 (applying the same standard to petitions asserting actual innocence as a gateway to raise habeas claims that are time-barred under § 2244(d)(1)). "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (quoting *Schulp*, 513 U.S. at 324). "If the evidence is new and reliable, then the habeas court should evaluate the petitioner's claim by considering all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Blacklock v. Schnurr,* No. 24-3125, 2024 WL 4880569, at *5 (10th Cir. Nov. 25, 2024) (unpublished) (internal citations and quotations omitted).

Kinder has not presented new *reliable* evidence. Kinder's purported "new evidence" is the Affidavit which contradicts and recants Melendez's trial testimony. Such evidence "is not sufficiently 'reliable' to establish actual innocence." *Ater v. Pettigrew,* 20-CV-1090-G, 2021 WL 5228521, at *8 (W.D. Okla. May 21, 2021), *report and recommendation adopted* 2021 WL 5234557 (W.D. Okla. Nov. 9, 2021). "Recanting testimony has long been disfavored as

17

the basis for a claim of innocence. Appellate courts, even on direct review, look upon recantations with extreme suspicion." *Case v. Hatch,* 731 F.3d 1015, 1041-42 (10th Cir. 2013) (internal quotations and citations omitted); *see also United States v. Ramsey,* 726 F.2d 601, 605 (10th Cir. 1984) ("recanted testimony is properly viewed with suspicion."). The Affidavit, standing alone, is suspicious.

The timing of the Affidavit, over fourteen years after trial, further undermines its reliability. *Schlup*, 513 U.S. at 332 (the Court "may consider how the timing of the submission … bear[s] on the probable reliability of that evidence."). When the Affidavit is considered against the other evidence presented at trial, the Affidavit has minimal, if any, reliability left which would entitle Kinder to relief.

First, Melendez testified at trial she knew Kinder through her boyfriend and had seen Kinder about fifty times. ECF No. 8-5 at 25. This testimony directly contradicts Melendez's current position that "[s]he did not know Kinder by name in June of 2003" and "[s]he did not know Kinder by sight[.]" ECF No. 1-2 at 10. She also testified at the preliminary hearing Kinder's girlfriend, Demetric White, threatened Melendez after the incident. ECF No. 8-5 at 46-50. If Melendez did not know who Kinder was and did not witness anything relevant, Melendez's testimony that she was threatened by Demetric White makes no sense. She testified in detail regarding her

18

evening and the events of the night, and she stood firm in her account after being subject to cross-examination. The Court finds Melendez's trial testimony to be credible, even considering her recent Affidavit. *Schlup,* 513 at 330 (newly presented evidence may require the Court "to make some credibility assessments.").

Second, a separate witness, Ida Warledo, also testified consistently with Melendez that Kinder's hair was in braids to his neck and identified the individual with medium braids as the shooter. ECF No. 8-1 at 10-11 and ECF No. 8-5 at 132. Third, Kinder placed himself at the scene of the argument which directly contradicts Melendez's statement that "[s]he did not see Kinder in an argument with other black men versus two Hispanic males." *Compare* ECF No. 8-6 at 52-53 *with* ECF No. 1-2 at 10. In all, the Court concludes the Affidavit is not reliable. And even if it were considered reliable, the Affidavit when considered with the trial evidence is insufficient to establish "more likely than not any reasonable juror would have reasonable doubt." *House,* 547 U.S. at 538.

### ***CONCLUSION***

The Court finds and concludes Kinder's Petition for Writ of Habeas Corpus [ECF No. 1] is time-barred and Kinder has not satisfied the requirements to pass through the actual innocence gateway. The Court therefore dismisses the Petition. The Court further concludes that no

certificate of appealability shall issue because no reasonable jurists would debate the dismissal of the Petition on statute-of-limitations grounds. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Motion to Dismiss [ECF No. 6] is **granted**; the Petition [ECF No. 1] is **dismissed**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

**IT IS SO ORDERED** this 15th day of May, 2025.

Sara E. Hill
UNITED STATES DISTRICT JUDGE